# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **DEBRA R. SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15CV00035 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **SAM'S EAST, INC.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Mary Lynn Tate, Tate Law, PC, Abingdon, Virginia, for Plaintiff; W. Bradford Stallard, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant.*

In this diversity action, the plaintiff seeks recovery for injuries she sustained when she slipped and fell on premises of a retail store operated by the defendant. The plaintiff contends that the defendant was negligent by failing to keep premises free from dangerous conditions of which it knew or should have known. The plaintiff further alleges that the defendant should be equitably estopped from asserting any defenses. Based on the undisputed facts, I will grant the defendant's Motion for Summary Judgment.

## I.

The essential facts, taken from the summary judgment record and recited in the light most favorable to the nonmovant, are as follows.

On July 6, 2012, at approximately 8:20 p.m., the plaintiff, Debra R. Smith, visited the Sam's Club store in Bristol, Virginia, which is owned and operated by the defendant, Sam's East, Inc. ("Sam's"). Upon entering the store, Smith obtained a metal shopping cart provided by Sam's. While pushing the cart into one of the aisles, Smith slipped on liquid on the floor. One of her legs slid under the cart and her ankle was cut by the bottom of the cart. Smith denies seeing the liquid prior to falling.

Store employees responded to the incident within seconds. The assistant manager on duty, Randy Whistler, prepared an incident report after speaking with Smith. A subsequent investigation and review of video security footage revealed that Smith had slipped on a puddle of soft drink soda caused when an adolescent boy deliberately punctured a shelved plastic Pepsi bottle. Whistler ultimately was able to identify the boy, as well as the customer he was with.

The security footage also revealed that the time between when the bottle was punctured and when Smith fell was approximately five minutes. During that time, no employees were in the area of the spill. However, an employee had conducted a routine safety walk to check the area for spills shortly before the spill acutally occurred. The store first learned of the spill as a result of Smith's fall.

Following discovery, Sam's has moved for summary judgment in its favor. Sam's argues that, pursuant to Virginia law, summary judgment is appropriate

because it had no knowledge or notice of any defect on its premises. The defendant's motion is ripe for decision, having been fully briefed by the parties.[1]

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine issue of material fact sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994).

Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party "need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *Cray Commc'ns, Inc. v. Novatel*

---

[1] I will dispense with oral argument because the facts and legal contentions have been adequately presented in the materials before the court and oral argument would not significantly aid in the decisional process.

*Comput. Sys., Inc.,* 33 F.3d 390, 393 (4th Cir. 1994) (internal quotation marks and citations omitted). Summary judgment is not "a disfavored procedural shortcut," but rather is a valuable mechanism for excluding "claims and defenses [that] have no factual basis." *Celotex,* 477 U.S. at 327. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotations marks and citations omitted).

III.

Virginia substantive law governs this diversity action. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938). In Virginia, the law applicable to slip-and-fall cases is well settled. *See Winn-Dixie Stores, Inc. v. Parker,* 396 S.E.2d 649, 650 (Va. 1990). A landowner "must use ordinary care to keep his premises reasonably safe for an invitee, although he is not an insurer of the invitee's safety." *Tate v. Rice,* 315 S.E.2d 385, 388 (Va. 1984). In the absence of any evidence tending to show that a landowner knew, or should have known by exercise of reasonable diligence, of the defect or unsafe condition, the landowner will not be liable for injuries caused by some defect or unsafe condition in the premises. *See Roll 'R' Way Rinks, Inc. v. Smith,* 237 S.E.2d 157, 161 (Va. 1977).

Sam's argues that summary judgment is appropriate because it had no knowledge of any defect or hazardous condition, which in this case was the spilled

liquid on the floor.  Additionally, video surveillance footage establishes that a third party is responsible for the spill, not Sam's.  In the absence of evidence showing that some affirmative conduct of the defendant caused the condition, the plaintiff must show that the defendant had actual or constructive knowledge of the condition.  *Ashby v. Faison & Assocs., Inc.,* 440 S.E.2d 603, 605 (Va. 1994).

"In premises liability cases, the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of a defective condition on the premises to establish a *prima faci*e case of negligence."  *Grim v. Rahe, Inc.,* 434 S.E.2d 888, 889 (Va. 1993).  The applicable standard is "whether [the defendant] knew or should have known, of the presence of the [defect] that caused [the plaintiff's] fall and failed to remove it within a reasonable time or to warn of its presence."  *Ashby,* 440 S.E.2d at 605.

Here, Smith has produced no evidence that Sam's had actual knowledge or notice of the spilled soda on the floor.  No employees were in the area of the spill at the time of the incident.  Indeed, Sam's first learned about the spill as a result of Smith's fall and was not aware of it prior to the incident.  Therefore, the remaining issue is whether the defendant had constructive knowledge of the spilled Pepsi prior to Smith's fall.

Constructive knowledge of a defect or dangerous condition on the premises may be established by evidence that the condition "was noticeable and had existed

for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim,* 434 S.E.2d at 890. Here, there is no need to speculate as to how long the soda had been on the floor. The video surveillance footage in the record demonstrates that Smith's fall occurred within minutes of when the soda bottle was punctured. Thus, the liquid simply had not been on the floor long enough that knowledge of it should be imputed to Sam's. Accordingly, Smith has failed to prove the prima facie element of notice, and I find that summary judgment must be awarded in favor of Sam's.

Smith argues that genuine issues of material fact exist precluding summary judgment. First, Smith asserts that Sam's had a duty to provide premises that were reasonably safe for customers and did not do so by failing to respond to the vandalism that caused the spill and by supplying its customers with dangerous shopping carts. Smith further contends that Sam's assumed a heightened duty to constantly monitor its concerete floors and did not do so, thereby allowing the spilled Pepsi to remain on the floor and ultimately causing Smith to fall. Finally, Smith asserts that Sam's defenses are barred based on equitable estoppel for failing to provide the vandal's identity. I will address each of these arguments in turn.

### 1. Duty to provide safe premises.

Smith first argues that Sam's breached its duty of "prevision, preparation and lookout as well as the duty of ordinary care to see that the premises are in a

reasonably safe condition" because it failed to immediately detect the act of vandalism that led to Smith's injury. *Appalachian Power Co. v. La Force,* 201 S.E.2d 768, 770 (Va. 1974). In essence, Smith contends that if an employee had been working in the section of the store where Smith fell or had been monitoring the security footage at the time of the vandalism, the spill would have been detected and her fall prevented.

As discussed previously, Virginia premises liability law provides that a store owner has a duty to exercise a reasonable degree of care to make his premises safe for invitees or to warn of any unsafe condition known, or by the use of ordinary care should have been known, to the owner. *Tate,* 315 S.E.2d at 388. In this case, Smith's argument would essentially require that Sam's, as well as all retail stores, be an insurer of its customers safety. This is simply not the law in Virginia.

Moreover, in the absence of any evidence tending to show that a landowner knew, or should have known by exercise of reasonable diligence, of the defect or unsafe condition, the landowner will not be liable for injuries caused by some defect or unsafe condition in the premises. *See Roll 'R' Way Rinks, Inc.,* 237 S.E.2d at 161. "General knowledge of potential peril is insufficient" to establish actual or constructive notice under Virginia law. *Logan v. Boddie-Noell Enters.,* No. 4:11-cv-00008, 2012 WL 135284, at *7 (W.D. Va. Jan. 18, 2012). In order to establish liability, a plaintiff must show that the defendant had notice of "the

specific unsafe condition that injured her." *Hodge v. Wal-Mart Stores, Inc.,* 360 F.3d 446, 453 (4th Cir. 2004). In this case, the specific unsafe condition was the liquid from the punctured bottle on the floor. Sam's was not aware of the spill until after the incident occurred. The fact that Sam's may have been aware that its concrete floors could be dangerous if covered with a foreign substance does not change the fact that it did not have notice of the specific unsafe condition that caused Smith's injury. Therefore, any generalized knowledge about the possible danger of concrete floors is insufficient to prove notice in this case.

### 2. *Assumption of duty.*

Smith also contends that Sam's assumed a heightened duty of care to constantly monitor for spills because Sam's was aware that its concrete floors can be slippery when wet. Smith claims that Sam's breached this duty by failing to monitor the security footage and immediately detect the spilled soda.

In determining the extent to which a defendant owes a plaintiff a duty, Virginia has adopted the common-law principle of assumption of duty. *Didato v. Strehler,* 554 S.E.2d 42, 48 (Va. 2001). This principle provides that a person who affirmatively undertakes a duty must act reasonably in her undertaking or be subject to liability for harm resulting from her failure to do so. *Id.; see also Burns v. Gagnon,* 727 S.E.2d 634, 643-44 (Va. 2012). In this case, the assumption of

duty doctrine is not applicable because the evidence does not establish that Sam's affirmatively assumed a duty to constantly monitor its floors.

In support of her claim, Smith relies on Sam's internal policies and procedures. Specifically, Smith contends that Sam's introduced "extraordinary measures to control wet concrete floors" and "instituted hourly store wide visual sweeps," and that this conduct amounted to an assumption of a duty to constantly monitor spills. (Pl.'s Br. in Opp'n 9, ECF No. 31.)

However, Smith's reliance in this regard is misguided. Evidence of internal policies or procedures does not change the duty owed to business invitees under Virginia law. *See Va. Ry. & Power Co. v. Godsey,* 83 S.E. 1072, 1073 (Va. 1915) ("Private rules may require of employees less or more than is required by law; and whether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party.") "Virginia has long held that a person cannot, by the adoption of private rules, fix the standard of his duties to others." *Elliott v. Food Lion, LLC,* No. 1:12-CV-1426, 2014 WL 1404562, at *7 (E.D. Va. Apr. 10, 2014) (internal quotation marks and citations omitted). Accordingly, evidence of Sam's internal policies cannot be used to establish a heightened standard of care, and Smith's argument in this regard must fail. Furthermore, to impose a duty on Sam's to constantly monitor its floors for spills would essentially amount to strict liability.

### 3. Defective shopping cart.

Next Smith argues that because Sam's was aware of the possibility of spills and falls on its concrete floors, Sam's breached its duty of care by providing a shopping cart that "posed an unreasonable risk of injury." (Pl.'s Br. in Opp'n 9, ECF No. 31.)  Smith claims that but for the shopping cart, her injury from the fall would have been less severe.

The facts in the record as to exactly how Smith's ankle was cut by the shopping cart are limited and possibly contradictory.

There is a photograph in the record taken shortly after Smith's fall that shows the dark puddle of soda next to the shopping cart. (Suppl. Mem. Supp. Summ. J., Ex. C, ECF No. 30-3.)  While viewing the photograph during her deposition, Smith agreed that her shin had been cut by the "bar that goes straight across that looks like it's over top of the two [rear] wheels."  (Def.'s Reply Mem., Ex. A, Smith Dep. 17-18, ECF No. 33-1.)  That metal bar is connected to each side of the cart and holds the spaced metal rods that create the shelf in the bottom of the cart. (Pl.'s Br. in Opp'n, Ex. 1, Whistler Dep. 25, ECF No. 31-1.)   On the other hand, the store employee who was first on the scene after Smith's fall surmised that she had been cut by "the rough edged metal rods on the lower shelf of the cart." (*Id.* at Ex. 3, Clendenin Decl. ¶ 5, ECF No. 31-3.)   No rough edges are visible in the photograph.

A month after the accident, counsel for Smith wrote requesting that Sam's preserve the cart involved in the incident. (*Id.* at Ex. 4, Tate Letter, ECF No. 31-4.) However, at that time, there is no evidence that Sam's would have had any way of knowing which of its carts was the particular cart involved in Smith's case. Although the store had since obtained new shopping carts, at the time of discovery in the case Sam's still had on its premises a sample of the type of cart used by Smith. (*Id.* at Ex. 1, Whistler Dep. 26, ECF No. 31-1.) Nevertheless, there is no further description in the record of the alleged dangerous portion of the shopping cart. The best that can be said, viewing the evidence in the light most favorable to Smith, is that her ankle was cut by something on the bottom of the cart.

In any event, there is no evidence that Sam's had knowledge of such a condition on this cart or on any of its shopping carts or any reason to believe that a customer might injury themselves in such a manner by falling under a cart. A Sam's employee testified without contradiction that he was not aware of any customer having been injured in a similar fashion. He stated, "We've had people cut by the plastic on the handles, but that's the only one that I'm aware of." (*Id.* at Ex. 2, Orr Dep. 65, ECF 31-2.)

Smith has produced no evidence, by way of expert testimony or otherwise, that the design of the shopping cart was somehow defective or deviated from industry standards. "'[T]he burden [is on] the plaintiff to show that the defendant[]

deviated from the standard of ordinary care, either by failing to observe applicable trade customs and building code provisions or by some other defalcation.'" *Foglia v. Clapper,* 885 F. Supp. 2d 821, 827 (E.D. Va. 2012) (quoting *Morrison-Knudsen Co. v. Wingate,* 492 S.E.2d 122, 124 (Va. 1997)).

Accordingly, I find Smith's claim in this regard unsupported by the facts contained in the summary judgment record.

### 4. Equitable estoppel.

Smith finally argues that Sam's should be estopped from asserting any defenses because of Sam's failure to provide the identify of the boy who punctured the soda bottle. "The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) a change of position, and (4) detriment." *Cowan v. Psychiatric Assocs., Ltd.,* 387 S.E.2d 747, 749 (Va. 1990) (citing *Dominick v. Vassar,* 367 S.E.2d 487, 489 (Va. 1988)). Smith bears the burden of proving these elements by "clear, precise and unequivocal evidence." *Id.* (internal quotation marks and citations omitted).

With respect to a representation, Smith states that "Sam's adjustment agent refused to give that identity to counsel for plaintiff." (Pl.'s Br. in Opp'n 10, ECF No. 31.) However, Sam's did inform counsel for Smith of the third party vandalism shortly after the incident, and Sam's contends that Smith did not respond to this information or request any additional information in this regard. In

any event, Smith does not explain why she could not have obtained this information in discovery, if known by Sam's or anyone who investigated the accident. Accordingly, Smith has not met her burden of proving the elements of equitable estoppel by clear, precise and unequivocal evidence, and her argument in this respect must fail.

IV.

It is therefore **ORDERED** that the defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED. A separate final judgment will be entered herewith.

ENTER: June 7, 2016

/s/ James P. Jones
United States District Judge